HAWKINS, Judge.
 

 Two indictments against relator were returned into the District Court of Ward County. One charged him with the murder of N. V. Nixon, the other with the robbery of Nixon by the use of firearms. These cases were transferred upon change of venue to El Paso County. The murder case was tried resulting in a conviction with punishment assessed at confinement in the penitentiary for life. A new trial was granted after which habeas corpus proceedings were instituted in El Paso County in an effort to secure bail. The writ was granted but made returnable before the District Judge in Ward- County where the case originated. Upon hearing there relator was remanded without bail from which judgment this appeal is prosecuted.
 

 It appears from the record that one W. S. Ham was also indicted in Ward County charged with the murder of Nixon. The first association between Ham and appellant of which we are apprised occurred in Big Springs where relator and his wife and Ham and his wife were rooming at the same house. Relator represented himself as being engaged in the oil lease business. Some time during the month of September he and Ham were away from Big Springs for a week or ten days. During this time it is shown they were in El Paso and relator made arrangements with Nixon who was a service ear driver there to drive relator and Ham for several days through the oil fields. Witnesses identified relator and Ham as' being the parties with Nixon at different places after they left El Paso. Nixon did not return at the time expected and some publicity was given to his disappearance. The latter part of December or January his body was found buried in a shallow grave in Ward County. A wrist watch was found upon the body and other articles belonging to him which made his identification complete. Relator and Ham returned to Big Springs in a Ford touring car which they did not have before leaving. This car was shown to have belonged to Nixon. The day after their return the two men and their wives went in this car to visit Mr. and Mrs. Powers. While there a conversation occurred between relator and Powers relative to the exchange of automobiles but the consummation of the trade did not take place upon that trip. A few days later Ham returned to Powers’ with the car and a trade was made with Powers, Ham saying at the time
 
 *490
 
 that he (Ham) then owned the car. Ham signed the bill of sale to Powers and received in his own name from Powers a bill of sale for the Powers ear. The Powers car was traced, and the evidence showed when it was sold two men were present, Ham being one of them, who executed that bill of sale. Both Ham and relator were later arrested in California. At the time the body of Nixon was discovered bullet holes were found in his cap. Ham testified that the pistol belonging to him, and which he had at the time of his arrest in California, was the one with which Nixon was killed. He says the last time he saw Nixon after he had been killed was when relator was' taking the body behind some bushes where he had seen a hole before Nixon was killed; that he did not see the body after it was placed in the hole; that Nixon was shot and also struck with a shovel. He further testified that he had no blood on his own clothes after the killing but that relator did have blood on his shirt, which was not there prior to the killing; that relator returned the pistol to witness. He testified that after the car which they got from Nixon was traded to Powers he took the Powers ear and the money which he received in the exchange back to Big Springs. His exact language in that respect is: “I taken the money back to Big Springs and turned it over with the car.”
 
 We
 
 do not think it necessary to set out the evidence more in detail than has already been done.
 

 In determining whether bail should be granted it is necessary that the question be passed upon under the facts of each case. Among other reasons urged by relator why he is entitled to bail is from the fact that upon a trial of his case at El Paso the jury did not assess the death penalty but gave him life imprisonment in the penitentiary. The opinion is very short and shows there was no statement of facts whatever before this court. The record only disclosed that accused had been indicted and previously convicted and given a life sentence which was set aside. The case had to be passed upon without knowing what the facts were and it was held that under thqse circumstances accused was entitled to bail. In Ex parte Walker, et al., 95 Texas Crim. Rep. 267, 253 S.
 
 W.
 
 520, to which we are also referred it is recited that “neither the death penalty nor life imprisonment has been assessed against either of the relators.” The jury had assessed against them long terms of imprisonment. The facts of those cases will be found stated with more or less particularity in the opinions referred to in Walker’s case (supra). It is clear that in those eases the state was relying almost entirely upon the testimony of an accomplice. This is not the situation in the present case. The association of relator and Ham with the deceased is shown by many witnesses aside from the testimony of Ham.
 

 No doubt is left from the evidence in the present case that Nixon was killed. It occurs to us that a well guarded and dispassionate judgment would lead to the conclusion that relator was one of the
 
 *491
 
 guilty agents, and that he would probably be punished capitally if the law is administered. That the death penalty was not assessed upon the former trial might be persuasive of a different result under some state of facts, but in this case we do not regard it as conclusive upon the issue of bail.
 

 The judgment is affirmed.
 

 Affirmed.